# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

CONDUENT STATE HEALTHCARE, )
LLC, f/k/a/ XEROX STATE )
HEALTHCARE, LLC, f/k/a ACS STATE )
HEALTHCARE, LLC, )
           )
        Plaintiff, )
           ) C.A. No. N18C-12-074 MMJ CCLD
       v. )
           )
AIG SPECIALTY INSURANCE )
COMPANY, f/k/a CHARTIS SPECIALTY )
INSURANCE COMPANY, *et. al.,* )
           )
        Defendants. )
           )

Submitted: November 28, 2023
Decided: January 4, 2024

On Plaintiff's Motion for Summary Judgment on Exclusion 3(a)
**GRANTED**

On Defendants' Motion for Summary Judgment on Exclusion 3(a)
**DENIED**

## <u>OPINION</u>

Orrie A. Levy, Esq., (Argued), Robin L. Cohen, Esq., Keith McKenna, Esq., Cohen Ziffer Frenchman & McKenna LLP, New York, New York; Jennifer C. Wasson, Esq., David A. Seal, Esq., Carla M. Jones, Esq., Potter Anderson & Corroon LLP, Wilmington, Delaware; *Attorneys for Plaintiff*

Kenneth J. Nachbar, Esq., Megan Ward Cascio, Esq., Courtney Kurz, Esq., Emily C. Freidman, Esq. Neal M. Glazer, Esq., Izak Weintraub, Esq., London Fischer, LLP;

Robert J. Katzenstein, Esq., Julie O'Dell, Esq., Smith Katzenstein & Jenkins, LLP; Maaren A. Shah, Esq., (Argued), Michael B. Carlinsky, Esq., Todd G. Bettie, Esq. Jonathan E. Feder, Esq., Quinn Emanuel Urquhart & Sullivan, LLP; Robert S. Harrell, Esq., Mayer Brown; Peter H. Kyle, Esq., John L. Reed, Esq., DLA Piper LLP (US); *Attorneys for Defendants*

**JOHNSTON, J.**

The jury trial in this case lasted six days. The jury's verdict was in the form of answers to 10 specific questions. Plaintiff filed a Renewed Motion for Judgment as a Matter of Law Pursuant to Rule 50, To Set Aside/Amend/Alter the Judgment Under Rule 59(d), and/or for a New Trial Under Rule 59(a).

By Opinion dated February 14, 2023, the Court held:

> The Court finds that there are four principal reasons compelling retrial.

> The Court acknowledges that, in hindsight, the Winter Submission was so replete with evidentiary problems (hearsay, double or triple hearsay, inability to cross-examine the declarant, admitted lack of knowledge by the declarant), that it never should have been admitted—despite the agreement of the parties. As the trial progressed, that document, and speculative evidence about the bias and credibility of the absent witness, became a central focus.

> Contrary to several explicit written and bench rulings of the Court, AIG's counsel repeatedly referred to the jury a Press Release that had been unequivocally deemed inadmissible.

2

Despite repeated admonishments by the Court, AIG's closing argument was intended to persuade the jury to draw improper inferences from information set forth in privilege logs.

AIG further inaccurately and improperly argued that AIG never had any coverage obligation to Conduent. This argument is directly in violation of the Court's pretrial holding that AIG breached its contractual duty to pay defense costs.

The Court finds that, in order to prevent manifest injustice, exceptional circumstances exist demonstrating that justice would miscarry if the jury's verdicts were allowed to stand. **THEREFORE,** Plaintiff's Motion to Set Aside the Judgment Under Rule 59(d) and for a New Trial Under Rule 59(a) is hereby **GRANTED.**

**FURTHER THEREFORE,** Plaintiff's Motion for Judgment as a Matter of Law pursuant to Rule 50 is hereby **GRANTED IN PART.** The Court finds, as a matter of law, that AIG's initial denial of coverage, and continued repudiation of coverage obligations, relieved Conduent of any duty to cooperate or to seek consent with regard to settlement with the Texas Attorney General.

**IT IS SO ORDERED.**

Plaintiff's Application to Maintain Sealing is hereby **GRANTED**.

The parties have filed cross-motions for Summary Judgment on Exclusion 3(a). Application of Exclusion 3(a) is a purely legal issue. The Court stayed

resolution of this issue until after trial because it was possible that the jury's verdict would have rendered the matter moot.

## EXCLUSION 3(a)

### *Waiver*

Plaintiff argues that the Defendant Insurers waived Exclusion 3(a) as a defense.

Superior Court Rule 12(b) requires that every defense "shall be asserted in the responsive pleading." Defendants asserted the defense of Exclusion 3(a) in the answer to the original complaint, in the answer to the amended complaint, and in the amended answer to the amended complaint.

At a hearing prior to trial, the Court found that application of Exclusion 3(a) was a question of law. No questions of fact - concerning interpretation of Exclusion 3(a) - had been identified by any party that would require resolution by the jury. The Court held that no testimony solely relating to Exclusion 3(a) would be admitted at trial. The issue would be resolved after trial, if the verdict did not make it moot. Resolution of Exclusion 3(a) is not moot at this juncture.

The Court finds that Defendants have not waived the Exclusion 3(a) defense.

### *Application of Exclusion 3(a)*

Exclusion 3(a) provides:

> This policy shall not cover **Loss** in connection with a **Claim** made against an **Insured**:
>
>> (a) alleging, arising out of, based upon or attributable to a dishonest, fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law....

**Loss** is defined as "compensatory damages, judgments, settlements, pre-judgment and post-judgment interest and Defense Costs...."

**Claim** includes a "**Suit**." **Suit** "means a civil proceeding for monetary, non-monetary or injunctive relief, which is commenced by service of a complaint or similar pleading...."

It is not disputed that the settlement between Conduent and the State of Texas, which is at the heart of this litigation, is a **Loss** as defined in Exclusion 3(a). By paying the settlement amount, Plaintiff experienced a **Loss** in connection with a **Suit**, which constituted a **Claim** made against the Plaintiff **Insured**. The essential question raised in these cross-motions is whether Exclusion 3(a) applies to exclude coverage on the basis that the settlement of the underlying Texas action was for contentions "alleging, arising out of, based upon or attributable to a dishonest, fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law...."

New York law applies to policy interpretation in this case. Insurance policy exclusions must be read strictly and narrowly against the insurer. The insurer bears

the burden of proving that an exclusion applies to defeat coverage. The burden is to establish that the exclusion is subject to no other reasonable interpretation.[1]

It is not unusual for an underlying suit to allege facts relating to excluded conduct as well as conduct that would not fall within the exclusion. For example, fraud in the inducement and breach of contract counts frequently are brought within the same complaint. It would be unreasonable for a fraud exclusion to eliminate coverage for a loss relating to contract claims. Including factual allegations - of dishonesty, intentional misrepresentation, or violation of law - does not mean that the entire complaint becomes a single "claim" or "loss." Such an interpretation of "'arising out of' effectively extends coverage of the exclusion to just about anything remotely connected...."[2]

The Court must look to the substance, or gravamen, of the underlying lawsuit. The question is whether the alleged facts are solely or primarily based on acts prohibiting coverage under Exclusion 3(a) - "dishonest, fraudulent, criminal or malicious act, error or omission, or any intentional or knowing violation of the law".[3]

---

[1]*J.P. Morgan Sec. Inc. v. Vigilant Ins. Co.*, 37 N.Y.3d 443, 447-48 (N.Y. 2021); *Cragg v. Allstate Indem. Corp.*, 17 N.Y.3d 118, 122 (N.Y. 2011).

[2]*ACE American Ins. Co. v. Guaranteed Rate, Inc.*, 2023 WL 5965619, at *8 (Del.).

[3]*See Lewis & Stanzione v. St. Paul Fire & Marine Ins. Co.*, 2015 WL 3795780, at *4 (N.D.N.Y 2015) (exclusion applied because the **only** interpretation of the claims was that the insured acted dishonestly or fraudulently, or at least with knowledge of dishonest and fraudulent behavior);

The action originally brought by the State of Texas was under the Texas Medicaid Fraud Prevention Act. The Texas action alleged dishonest and fraudulent acts and omissions, as well as knowing violations of law.

The controlling pleading is the Third Amended Petition. In addition to claims under the Texas Medicaid Fraud Prevention Act, the Third Amended Petition included the following factual allegations.

> • "Xerox assumed operations under the 2003 contract on or around January 1, 2004. At or around that same time, Xerox implemented a different procedure than that described in its P&Ps [policies and procedures]. Without submitting documentation of this change to HHSC, Xerox instructed its clerical personnel assigned to the dental prior authorization department to begin automatically approving orthodontic prior authorization requests for Medicaid patients, age 12 or over, accompanied by an HLD score sheet that showed a score of 26 or above on its face."

> • "The clerical personnel hired and assigned to the dental prior authorization department had no qualifications in the field of dentistry and were not qualified to evaluate the patients' condition as reflected in the diagnostic records, much less confirm the accuracy of the diagnosis and HLD scores dental providers submitted. Indeed, the clerical

_Gibbs v. CNA Ins. Cos._, 263 A.D.2d 836, 837-38 (3d Dep't 1999) (This case is distinguishable. Coverage for indemnification was excluded where the gravamen of the claim was acts of sexual abuse. The defendant had pled guilty in the related criminal case, even though the civil case was based solely on negligence. In this action, there has been no admission by Plaintiff of conduct specifically enumerated in Exclusion 3(a)).

7

personnel under the direction of Xerox supervisors made no attempt to do so."

• "By 2008, Xerox had the clerical personnel working remotely from home without access to the diagnostic materials. In most instances, the clerical personnel did not confirm that any or all of the required diagnostic records were actually submitted by the provider as required by Medicaid policy. Further, the clerical personnel were not trained to review the HLD sheet for obvious over-scoring or violations of Medicaid policy that were evident on the face of the HLD sheet."

• "If a prior authorization request contained an HLD sheet for a person who met Medicaid eligibility requirements and the HLD sheet contained a score of 26 or higher, approval was entered by the clerical personnel without further examination. Xerox's process drastically reduced the number of orthodontic prior authorization requests reviewed by the dental director, who was the only person employed by Xerox with dental qualifications to be able to review the requests and determine whether patients' conditions qualified as a severe handicapping malocclusion."

• "Xerox implemented cost-saving measures for its own operation, not Medicaid's, that made adequate reviews less likely. In or around August 2006, Xerox launched its Activity Based Compensation ('ABC') plan. Under ABC, clerical personnel reviewing prior authorization requests were compensated on a piece-work basis. This incentivized employees to process more prior authorization requests in less time."

• "From 2004 to 2012, Xerox entered approvals for thousands of orthodontic prior authorization requests into the State's Medicaid system without conducting a

substantive prior authorization review and by having unqualified clerical staff not verifying whether the patients actually qualified under Medicaid policy for the orthodontia benefit and services requested."

The Settlement Agreement and Release was signed by a representative of the Office of the Attorney General of the State of Texas, and by the Conduent defendants. The Agreement provides that the civil action filed against Conduent in August 2014 asserted "several grounds for alleged non-compliance with contractual obligations purportedly owed by Conduent [to Texas] and seeking, among other things, the return of documents and information [Texas] claimed it owned under the 2010 Contract." The Agreement states:

I.      The allegations in the Audit Reports, the Notice of Termination, the State Action, the Related Actions, and the HHSC Action arise out of services provided to the State of Texas under the 2003 Contract and the 2010 Contract, including without limitation the prior authorization process for orthodontic services under Texas Medicaid.

J.      Prior to entering into and reaching this Agreement, the State of Texas advised DEFENDANTS that it was prepared to amend the State Action to add causes of action for breach of contract of the 2003 Contract and 2010 Contract, including the claimed contractual breaches discussed in the Audit Reports and in the Notice of Termination, and negligence in the performance of contractual services for HHSC.

9

K.  This Agreement is the result of the Parties' compromise on disputed issues of fact and law and the Parties' desire to buy peace and avoid further litigation and associated uncertainty and expense regarding the Audit Reports, the Notice of Termination, the State Action, the Related Actions, the HHSC Action, and any other present or future disputes arising out of the 2003 Contract or 2010 Contract, and this Agreement is neither an admission of facts, wrongdoing, or liability by DEFENDANTS nor a concession by HHSC and/or the State of Texas that their allegations and claims are not well-founded.

The Settlement Agreement allocates the entire Settlement Amount "to reimburse [Texas] for monetary losses claimed to have resulted from alleged failures to comply with obligations by Conduent...under the 2003 Contract and 2010 Contract" and "towards payment of attorneys' fees, costs, and legal expenses...." "No portion of the Settlement Amount shall be allocated or attributed to the payment of fines, penalties, or other punitive assessments, or to disgorgement or revenues."

The Court has reviewed the plain language of Exclusion 3(a). The language must be read strictly and narrowly against the insurer. The Court finds that Defendant have failed to prove that Exclusion 3(a) applies to defeat coverage. The bulk of the original Petition is based on dishonest or fraudulent acts, or on intentional or knowing violations of the law. The Third Amended Petition sets forth numerous allegations arising from alleged breaches of contract. While the facts underlying all

allegations are related, the Court finds that the gravamen of the Third Amended Petition is not solely based on excluded conduct. The contract claims are separate and distinct from the claims based on fraud, dishonest acts, or knowing violations of the law.

The Settlement Agreement and Release encapsulates the actual Loss. The Agreement unequivocally states that the entire monetary amount is allocated to contractual liability. Upon retrial, a jury may find that the Settlement resulted from fraud or collusion. In that event, Defendants would be relieved of any indemnification obligation and the Exclusion 3(a) issue would be moot.

## CONCLUSION

The Court finds that Defendants have not waived the Exclusion 3(a) defense. The Court further finds that Defendant have failed to prove that Exclusion 3(a) applies to defeat coverage.

**THEREFORE,** Plaintiff's Motion for Summary Judgment on Exclusion 3(a) is hereby **GRANTED.** Defendants' Motion for Summary Judgment on Exclusion 3(a) is hereby **DENIED.**

**IT IS SO ORDERED.**

*Mary M. Johnston*
The Honorable Mary M. Johnston

11